Okay, Mr. Marshall, would you kindly call the first case of the morning? Yes, sir. Your Honor, this case on Docket 2-17-0656. In re Marriage of Vicki L. Preston, Petitioner Napoli and Philip E. Preston, Respondent of Court. Argument will be made on behalf of Mr. Evan T. Smith. Argument will be made on behalf of Petitioner Napoli, Mr. Steven M. Langer. Thank you, Mr. Marshall. Mr. Smith, you may proceed. Thank you, Your Honor. May it please the Court, I'm Andrew Smith and I represent Phil Preston, the appellant slash cross-appellee in this matter. First and foremost, this Court has jurisdiction pursuant to Supreme Court Rule 303. There was a full-blown trial in this matter. Testimony and evidence taken and heard. And the Court made a final decision. Motions to reconsider were filed. Those were heard and denied. And here we all are. This morning, I can spend a great deal of time potentially boring all of you with going into whether or not this was non-marital or marital property that we're discussing in this case or whether, and I'm talking about my client's business or if excuse me, if there was a specific contribution that he made 100% versus 0% by his now ex-wife and whether or not the trial court considered that as much as it should have. That's fully set forth in our brief. Unless Your Honors have questions about that the focus of my argument this morning is the tax issue. I do have a question about the classification of the business entity as marital property. Let me just ask you a couple of pointed questions. When the loans were taken out it's my understanding the parties were already married and this business was already operable, correct? That is correct, Judge. I think it was just starting out basically, yes. But that is true, correct? Yes, absolutely. Okay. If any of the loans if any of the loans, there were three loans we're talking about here Yes. If any of those were collateralized by marital property would that business then be marital? Well, potentially, Justice Burke but I think it's the initiation of it is an issue from our perspective which from our perspective is factually and evidentially is the loans were more than anything based on the personal guarantee of our client, Phil based on his education, experience with this very specific area of creation of a product ultimately and Mrs. Preston the then Mrs. Preston came into the marriage with no credit worthiness I believe there is very specific testimony about that because she had a prior bankruptcy I think with an ex-husband where her credit was terrible so she couldn't have even signed off if she wanted to so I don't believe factually that as the startup began keeping in mind that the business was proceeding even prior to the marriage or as the marriage happened as he was trying to set this up, our client and I don't think there was any evidence that the initial part was collateralized by anything more than Phil's personal business acumen his personal guarantee and the limited value equipment that the prior owner Can we follow up on that? It was sort of a novel theory so to speak, where you seem to indicate that the collateral for the loans was part of his persona was I think the way you phrased it  that says that that is to be considered? Not specifically, Your Honor Your Honor, I understand and I agree Justice Hudson, it is clearly a novel question but the question is from our perspective is how does someone's prior education long before the marriage years before they even met suddenly become marital property on the date of marriage doesn't seem to me that that would be appropriate Well it wouldn't, but if you know there's the well-sorted presumption all divorce practitioners presumably know that it's going to be presumed to be marital started after the marriage which in this case it did if you would acknowledge it was started after the marriage it was already growing concern so to speak the business was operating when these loans were taken out and you're making an argument we're going to look into this persona but I didn't see any case law that would support that argument to be candid about it I mean, you don't have any cases you can call attention to that support the proposition, right? Exactly, Justice Hudson I don't dispute that but again, the focus of my argument I believe more importantly the act that you're referring to Section 503 of the Marriage and Disillusionment of Marriage Act has numerous subsections that the court has to consider and how much weight one of which is the tax implications of the court's decision in this particular case the judge says it's zero which is just... it's just impossible it's an impossibility and you had very specific uncontroverted, uncontradicted testimony from both the parties as well as the tax returns Vicki Preston testified that she believed the implications of removing money from the business however that was done from her experience would have been roughly 20% state tax 35% federal income tax resulting in roughly 55% Phil testified 48% roughly or 50% someone in the neighborhood and the tax returns always showed that as 48% so ultimately what the judge does in just saying or I guess creating in Illinois a de jure community property state says oh 50-50 without considering the tax ramifications and when that was brought up to the court in argument was that well you didn't present an account well that seems to be the cart before the horse at that point because as they proceeded to trial the court hadn't determined one whether this was marital or non-parent marital which the court is required to do of course under the statute first secondly then the question is who gets what so at the very least you would need to know the value for an accountant to look at to say what would be the tax implications however it would be speculative until the court decides one presumably is here that it's marital and two that she gets X amount of the value of that so ultimately what you have here then the court says well you know you should have done this however all of the uncontroverted evidence and the court should presumably know there's tax consequences by paying out anything whether it's a sale of the business whether it's distributions of the business she was no longer an employee of the business so it couldn't be done that way and so you end up with a zero tax and the court the way the trial court handled it apparently acknowledging the fact that there would be tax implications it just said well I'm going to find that any transfer is non-taxable I don't think that's exactly what the court said I think the court said that and you argued or somebody argued along the way this business isn't going to be sold so in terms of a sale of the business there was no contemplation of the sale of the business therefore there was no contemplation of tax as it relates to the sale now as it relates to a sale on the other hand he was ordered to pay a certain portion or she was Mrs. Preston was entitled to a certain portion of the value of that business essentially to be determined looking at all of the documents by the parties and probably their financial advisors and I also think if you look at the value that he set it's it's possible that he took a lower value from a I in my opinion a less qualified appraiser in order to accomplish less taxes so I don't think the judge ever said no taxes he said there wasn't any there wasn't going to be a sale so there were no capital gains no taxes as a result of a sale and if doesn't it make sense though whether this is marital or non-marital whoever practices and prepares this case should have contemplated some payment or some distribution in some manner and have an accountant ready or possibly Justice Hutchinson but as you well aware I'm sure is the court is to take into consideration the evidence that was actually presented not speculative evidence that was or wasn't well then the evidence of tax should have been presented in some fashion and your client is the one who's more concerned about the tax consequences than Mrs. Preston I would assume wouldn't be her responsibility she could contest it but somebody's got to tell the court what the taxes would be in the event of a distribution or an issuance of stock or whatever the case may be did that happen absolutely Justice Hutchinson by whom Vicki Preston testified that the distributions they received throughout the marriage were roughly 55% she was familiar enough with how that worked she testified undisputed uncontradicted she testified the distributions would be taxed number two Phil Preston who also knew his business and knew about these also testified I believe his was roughly 48% the tax returns that are also evidence huge stack of I don't know foot tall stack also shows when these distributions were done that way keeping in mind your honor that this was then the situation that she was no longer an employee and I don't disagree and I think the court even alluded to it but I guess I'll use the phrase let's face it as what happens quite frequently with these small businesses is that it's used as like a piggy bank and I don't disagree with that but now there's an account due to stockholder that apparently is rather substantial I don't dispute that at least a million and a half or better right but I believe the testimony was if that were to be released or paid out there would be a tax on it I believe that's my recollection that was one of the issues also apparently used for something else that was an issue here that yes that said it's clearly the tax isn't zero your honor it's not zero and so if the court says okay fine as you said that well there's not going to be a sale contemplated so therefore something like that I'm going to say it's not taxable for capital gains as you described that still doesn't deal with the issue of how do you get the money out of the system without tax implications and the end result here is however it's paid at the very least Phil would have to borrow this substantial sum 2.8 million I think if I'm using the right number off the top of my head and even if he borrowed that money let's just say a reasonable amount of 8% interest and we kind of wrote this down in our brief I don't have the exact numbers I'm no mathematician I'm a lawyer but he has to make X amount in order to make those payments and cover the interest and the end result you have here and that's where it's not fair and it's not equitable on top of it and I don't think that's supposed to be I don't think that's the intent of it Mr. Smith he took out about $689,000 and another $800,000 for about $1,500,000 to purchase something in Florida was he worried about the taxes then? Did he make an assessment of the taxes then? What I'm saying here is he can do it if he wants to but yet a business that is ranging from maybe $9,000,000 to $5,000,000 based upon which expert you're talking about he does not see fit to bring in an accountant to explain this and he relies on his former wife to establish the tax consequences. That doesn't make a great deal of sense does it? Well again I don't know other than for an accountant to speculate assuming the court finds it meritable as you're saying what's the amount? To be able to sit there and an accountant can just be speculating then. But isn't that the problem with the case? The problem is that the court didn't order him to liquidate or tell him exactly how he was supposed to do this. How do you assess hypothetical tax consequences? How can you assess anything if you don't know what's going to unfold? I agree Justice Hudson that's what I'm saying. It was kind of the cart before the horse. Once the court determined that then they should have been able to address that issue. But the evidence that was before the court it's undisputed and it's not     the courtroom.    going to be discussed in the courtroom. And I think it's going to be discussed in the courtroom. And I think it's going to be discussed in the courtroom. I don't disagree Justice Burke with your analysis of that. However, there was evidence presented that there are tax implications. Internal Revenue Service says there are. No matter what a state court judge says, there are tax implications.  I think      the courtroom. And I think it's going to be discussed in the courtroom. And I think it's going to be    courtroom. Thank you. We will now present Bickey Preston in this appeal. Justice Hutchison, I want to pick up on your arguments, questions regarding tax consequences. I think it's important for the panel to understand and to concentrate on the fact that the only tax implications that should be considered are those that naturally flow from the court order. And the court order was very simple. Here's the value of Little Star Plastics, 5.68. Here's 50 percent. Judgment enters. That's it. No orders were given to sell the property or the business. No orders were given to pay dividends. No orders were given to pay during the form of salary. There was nothing that flowed from that order which has any sort of tax implications. I think the key here is that any future speculative sale of a business or any future speculative payment through this method or that method, that's what it is. It's speculation. And the law is very clear that we don't consider future speculative tax implications only ones that directly flow from the court order. In fact, there's one of the cases that's almost directly on point. The court should not consider the hypothetical future sale of a business. And I think that's part of the problem with Mr. Preston's argument is that it's all hypothetical. Nobody has been ordered to pay through the court order. The court order did not require him to sell the property. So at this point, I think the panel has acknowledged at this point, all we have is a judgment with an amount. And for that reason, the issue of tax consequences isn't ripe yet. We haven't gotten to a point where we're talking about how we're going to make this division. Well, the court didn't reserve jurisdiction or didn't continue the matter for that situation, did it? This was a final order. It was, Your Honor. It was a final order. And at that point, I guess it was either up to the parties to agree on how that was going to happen or come back to the court to seek further relief on how those payments were going to be made. But in arriving at that final amount, did the court at least allude to the record that it considered all of the records of statutory factors in arriving at what amount, Your Honor? The distribution. Did the court indicate, as you know, certain statutory factors that are supposed to be considered? Are you talking in terms of property division? Right. Division of property. Does the record reflect that the court did, in some manner, properly consider those factors? The record does indicate and the trial judge did consider the factors under 503 in terms of property division. Considering the factors doesn't necessarily mean that the trial court came to the right decision. That's absolutely correct, but at least there was indication they were considered. They were considered, Your Honor. I would agree with that. They were not considered under 503  were not considered under 503. The court did make a finding under the first factor in 503 that Phil Preston did make significant financial contributions to the marital estate. It's important to remind the panel what the trial court did not say. The trial court never said that Phil Preston contributed zero percent to the marital estate. Never found that Phil Preston contributed 100 percent to the marital estate. Those are the arguments that I take issue with made by Mr. Preston is that those were not findings by the court. What the court said was that what it found is that Mr. Preston made significant financial contributions to the marital estate. And nobody denies that. It would show that the court did consider defenders. It did, Your Honor. It does show that. This case though, leaves us in an interesting posture. I mean, when we have quadros and quildros and things that have to be formulated after a divorce, sometimes we leave time to get that accomplished. The court will say this will be done in 90 days, come back to this court and tell me what's happened. But it's still part of the judgment for dissolution. This award is part of the judgment for dissolution. And if we don't have some idea of tax consequences now, how does this come back as a post- judgment matter? I don't understand how it would come back to the Supreme Court if the parties could not agree on the issue of how this amount will be distributed. Well, I think that was kind of answered or asked at council in this argument, which is shouldn't that have been something that Mr. Preston seemed very, very concerned about, which the panel has noted. It's always been Mr. Preston seemed very, very, very concerned about the tax consequences. And I think that that's evidence or testimony that if that were his concern, it should have been presented during the course of the trial so that the trial court judge could have considered that and if necessary made a part of the judgment itself. I don't know the answer to the question of how it's going to be handled if it's remanded on that issue, if it would be a post-judgment type matter or not. But I do think that if Mr. Preston wanted some certainty or some direction or some findings from the court on that matter, that that's something that he needed to make sure was included in the original record at trial. If we were to remand it on that issue, it would still be pre-decreed. I mean, it would still be back to dealing with the original order. It wouldn't be post-decreed. Is there evidence in the record, again, I know you're going to say it's speculation, but assuming for the sake of argument that the payout is from distributions from the company, is there evidence in the record as to how those distributions were taxed in the past? How they were taxed in the past? I think the fair answer to that question is that the answer would be yes, because on the party's tax returns there would have been dividends that would have shown, well, it's the joint return, so it wouldn't just be his or her joint return. So there is some evidence of income and dividends that were received, that were reflected on the tax returns. I don't know how much you can garnish from that in terms of answering the questions and concerns that Mr. Preston and his counsel had today, but there is some evidence in the record. I'd like to take a step back and go back to the first issue, which is the issue of marital property. I guess I would say that when you take out a loan, you cannot take out a loan to acquire something that you already have. And that's the argument that Mr. Preston is trying to make at this point. When I took this loan out on December 31st of 1991, that's when I acquired Little Star. That's when I got the business. It is not true. I mean, the business was already operating. It was a going concern and that was carried subsequent to the marriage. That's correct, Your Honor. But Mr. Preston, he took out that loan in December of 1991. And so you're saying that is an erroneous argument why? It's an erroneous argument because as I just mentioned, Your Honor, you cannot acquire something you already have. We know from the record that he started the business in June of 91. There's no  that. We know that Mr. Preston got $22,000 of that. We know that he deducted expenses for Little Star. We know that all of these things were taking place prior to the loan. The only thing that the loan did is it allowed him to purchase some used equipment that he was already using. That he was already using to produce product to generate income. If I own a taxi service,  nine months I'm out there driving around in my taxi, and I'm collecting fares, and I'm making money, and it's Steve Langley Taxi Service. Did I acquire Steve Langley Taxi Service at that time, or was this already a business of going concern that existed? The answer to that question is obvious. I haven't bought a business in December of 91. I bought a piece of equipment that I'm using in my business. To go back to basics and not belabor it, as we know this is property that was acquired, started, subsequent to the marriage, it was a going concern, there's a rebuttable statutory presumption it is mineral property, correct? That is correct. The way around it under the most subtle statutory principles of case law is they would have to show that there was an exception that applied to this and the burden would be on them to establish that exception. That is correct, Your Honor. And the exception is that they acquired property subsequent to the marriage through the use of non-mineral property as collateral. And my argument, one that the trial court didn't address or pick up on, is you can't acquire something that you already have. And so for that reason alone, that provision doesn't apply. Does that distinguish this case from Heroy and Eddy? Heroy, what was the second case? Eddy. I don't believe those cases, they predate the A6.5 amendment to acquiring non-mineral property after the marriage. They were under 503A2, the exchange exception. I'm sorry. They were under 503A2, those cases. Exchange in terms of what? Exchange of property, non-mineral property for, again, non-mineral property. Off the top of my head, I don't know factually how that particular issue in those cases is different from ours. I think on the issue of Heroy, how it applies to this case is to the issue of property division, to the issue of permanent maintenance, to the issue of unequal distributions in terms of marital property. If you look at cases like Heroy and Nord and similar cases, they speak to the general principle that the court can consider an unequal distribution in addition to a permanent maintenance award. And that's one of the issues that we've challenged on appeal is that the trial judge did not take into consideration those factors. And when you look at the division of the marital property and you look at the case law of Heroy and Nord and you look at the 503 factors, we conceded that in terms of dividing property that the first factor of favor is still. Nobody's ever disputed that Mr. Preston was a great businessman, very intelligent, very creative. He gets his props for that. Nobody's denied that. And as they say, he was the key guy. Let me ask you a quick question on this issue. We had some pretrial orders that distributed property, correct? Correct. Did those orders for the most part distribute that property 50-50? They did, Your Honor. Can the trial court consider that? I mean, there were agreed orders, correct? There were agreed orders, Your Honor. I mean, you have a trial judge sitting there watching things unfold and at the end of the day, can a trial judge look back to see what the parties agreed to early on as some, I don't know, some indication of what the trial judge should do? Well, to be fair in answering your question, the answer is yes. And as the appellant, I've actually made that argument, which is Mr. Preston wants the lion's share of the estate because he claims he's 100% responsible for its growth and its value. As the appellant, I have made that exact argument, Your Honor, which is if the court looks at what it had been doing in the four or five pre-disillusion distributions, everything was divided equally. In fact, the one issue outside of an agreed order, which was the sale of the properties lot in Michigan, was also divided 50-50. So leading up to the disillusion distribution, the appellant has   argument that he's 100%  for its   value. And as the appellant, I have made that argument, which is Mr. Preston wants the lion's share of the estate     in Michigan. And that's why I think the case of Heroy is similar. It's probably the closest one to this case. Again, in that case, there was a stay-at-home mom who was raising children. But as I've argued, Vicki was even more valuable than that because instead of being at  with her children, she spent 16 of her adult life working years at the business running the human resources, running the accounting part of the business on a daily basis. For which she received a salary. That's correct, Your Honor. She did. Mr. Preston was also being compensated for his time during the marriage when he was at the business working as well. The primary difference in that particular relationship is we have this account called due-to-stockholder where different profits go in to pay taxes or to be distributed and that's still part of the business, this due-to-stockholder account, correct? Yes, and that's actually an area of contention, particularly when it speaks to the issue of the court's maintenance award which again, Justice Hudson, is an abuse of discretion standard. The argument on appeal is that the amount of maintenance that was set, $12,000 a month, $144,000 a year, if you just looked at 504 as a guide, and I don't think that the rebuttable amounts apply in 504, but if you just looked at it as a guide, that would roughly be based on Mr. Preston earning a salary of $480,000 a year. What we see on his tax return from 15, a million and a half, we see on his wage year-to-date stuff, a million and a half in 2016. On his answers to interrogatories the last several years, they were between half a million to a million dollars. All right, but the question is, what was her financial affidavit like? Did it express expenses in        to that question. I don't know the answer to that question. I don't know the answer to that question. I don't know the answer to her question. I would respectfully disagree with the analysis of the needs. I don't think that the case law talks about need. I think the case law refers to the party's standard of living that was enjoyed during the marriage. If you take the standard of living out of it, then you change the entire analysis. My client is responsible. She doesn't take extravagant vacations for the sake of taking them. She's not spending tens of dollars a month to live. Then we talk about standard of living. My question was what was that like? I'm not going to argue with a straight face that if we're talking about the issue of need, living comfortably like a reasonable person, in her situation, there's no issue of need based on $12,000 a month and what she received in the distributions. I'm not going to argue that needs an issue. It's not our theory of the appeal, and I can't stand her and tell you that she needs more money because she has more needs. That would be disingenuous. But can you give me a case that says, all right, maintenance is to take into consideration standard of living. I accept that. I believe that. But if she received a proportionate amount of salary, you said the $144,000 will be about $440,000, if she received that same proportionate amount of $1,000,004 or whatever his last $1,000,001, whatever his last statement was, what is she going to do? Can you give me a case that says we're entitled to enrich her accounts so that she has this additional money? Because I haven't found one myself. If you found one, I'd be happy to see it. It's my favorite case in the NPO, and I've mentioned it a few times, but if you look at the Heroy decision, that's a case where it was a very valuable estate, similar to this one. The wife received a disproportionate  of money. She received $35,000 a month in maintenance. There are other factors involved in that. In that case, the wife had been out of work for 20 years? Well, the wife had been a state home mom. Did that happen in this case? No. But, as I mentioned earlier, when the parties were married, Ms. Preston could not have any more children. And they talked about building Little Star and treating Little Star as their child. That's how they looked at Little Star as their child. So she wasn't home raising kids like the wife was. And that's why, as Mr. Preston has repeatedly said, she contributed 0%. It's just not a very genuine position to take. Nobody who does that for 16 years contributes 0%. You will have the right to readdress the court in the same  as   did. And that's  I'm   argue that Ms. Preston did not contribute 0%. I'm not going to argue that Ms. Preston did not contribute 0%. I'm also  going to argue  Ms. Preston  contribute 0%. A court that said that Ms. Preston did not contribute 0% is not true. But the direct implications whether it's as Justice Burke said it wasn't contemplated but it has to go from business to Mrs. Preston somehow. It doesn't magically appear without some type of consequences and that was undisputed and uncontroverted at trial. Not withstanding the failure of certainly Mr. Preston if not Mrs. Preston to bring in an accountant point noted. It wasn't ordered that it go from   business   Preston. So what I definitely disagree entirely with Mr. Langley is there is no option presented in which there wouldn't be some type of tax implications that directly flow from the trial court. And I think that Mr. Langley is right. I think that And I think that there   option presented in which there wouldn't  type of tax implications that directly flow from the trial court. And I think that there wouldn't be some  wouldn't   of tax implications that think that there wouldn't of tax implications